UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GARY PATRICK LEWIS,

               Petitioner,           Case No. 21-cv-10186

v.                               Paul D. Borman
                               United States District Judge

MATT MACAULEY,

               Respondent.
_____/

**<u>OPINION & ORDER DENYING THE PETITION FOR A WRIT OF
HABEAS CORPUS, DENYING A CERTIFICATE OF APPEALABILITY, &
DENYING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL</u>**

## I.    Introduction

This is a pro se habeas case brought pursuant to 28 U.S.C. § 2254.  Michigan

prisoner Gary Patrick Lewis ("Petitioner") was convicted of one count of second-

degree arson, MICH. COMP. LAWS § 750.73(1), and four counts of third-degree

arson, MICH. COMP. LAWS § 750.74, following a jury trial in the Wayne County

Circuit Court.  He was sentenced, as a fourth habitual offender, MICH. COMP.

LAWS § 769.12, to concurrent terms of 17 to 30 years imprisonment on those

convictions in 2014.  In his pleadings, Petitioner raises claims concerning his right

to counsel at the preliminary examination, the use of a photographic array, the

admission of voice identification testimony, the effectiveness of trial counsel, and

the police loss/destruction of evidence.  For the reasons set forth herein, the Court

denies the habeas petition.  The Court also denies a certificate of appealability and

denies leave to proceed in forma pauperis on appeal.

## II.    Facts and Procedural History

Petitioner's convictions arise from a series of fires at several abandoned

buildings in Detroit, Michigan on March 2, 2014.  The Michigan Court of Appeals

described the underlying facts, which are presumed correct on habeas review, *see*

28 U.S.C. § 2254(e)(1); *Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009), as

follows:

### A. PRELIMINARY EXAM

At the start of defendant's preliminary examination, the trial court
asked defendant to state his full name on the record. In response,
defendant stated, "I'm not talking. I don't have no attorney. This man
disrespecting me. You all violating my rights. I'm through with it. I'm
through with it." The trial court then stated that it had appointed
lawyers for defendant on multiple occasions, that defendant had
indicated his displeasure with each of the lawyers that were appointed,
and that defendant had in fact grieved each of the prior counsel.

In light of this, the trial court found that defendant had "elected that he
would prefer not to have a lawyer to represent him and we're going to
proceed." In response, defendant stated, "I never said that." The trial
court then reiterated that the preliminary examination would proceed
and that defendant's former trial counsel, Brian Scherer, would act as
stand-by counsel.

As the prosecution called Mollison Folson to testify, defendant stated,
"I'm not going to participate in this legal bullshit." The court then

warned defendant that he would be expelled from the courtroom if he continued his outburst. Defendant continued to interrupt the court while using profane language, so the trial court expelled defendant from the courtroom. After defendant was removed, the trial court told Scherer that he was free to leave as well. The court then continued with the preliminary examination, and after hearing testimony from six witnesses, the trial court held that there was sufficient probable cause to bind defendant over for trial.

## B. TRIAL

After defendant was bound over for trial, the following evidence was presented to the jury. At 10:30 a.m. on March 2, 2014, Folson observed defendant walking down Russell Street in Detroit. Folson heard defendant yelling loudly about how he had observed a white man raping several women. Folson then observed defendant walk into a vacant home located at 20527 Russell for 10 minutes. When defendant exited the home, he spoke with Folson briefly and then left. An hour later, Folson observed firemen attempting to put out a fire at 20527 Russell.

At 11:30 a.m., Raven Jackson and her husband, Christopher Goward, were loading up a van in front of their home, located at 20514 Hull in Detroit. Jackson and Goward observed defendant yelling and walking down their street. They then observed defendant enter the vacant house next-door, located at 20520 Hull. Approximately four minutes later, Jackson and Goward observed smoke coming out of 20520 Hull. The home eventually began burning and the fire spread and damaged 20514 Hull.

On the same day, Ronnie Blanton was taking pictures of a vacant house located at 20438 Hawthorne in Detroit. While he was taking pictures, Blanton observed defendant walking down Hawthorne and yelling into a cellular phone. Defendant then walked into a vacant house next door, located at 20430 Hawthorne. After defendant exited the home, Blanton observed smoke coming from the home. Blanton's coworker, David Forman, approached defendant, at which point defendant threatened to shoot Forman. Blanton asked defendant if he

set the home on fire, but defendant did not respond. The fire eventually spread to 20438 Hawthorne and damaged the home.

Lieutenant Jamel Mayers and Lieutenant Dennis Richardson were dispatched to Hawthorne Street to investigate the fires. Upon arriving, Blanton provided the officers with a description of defendant. Mayers and Richardson then began to search the area for defendant. After driving around, they spotted defendant and ordered him to stop. Defendant began to flee, but Mayers and Richardson were able to apprehend him. A search of defendant's pocket revealed four cigarette lighters.

*People v. Lewis*, No. 325782, 2016 WL 3945944, at *1-2 (Mich. Ct. App. July 21, 2016) (footnote omitted), *rev'd in part*, 501 Mich. 1, 903 N.W.2d 816 (2017).

Following his convictions and sentencing, Petitioner filed an appeal of right with the Michigan Court of Appeals raising several claims, including those raised on habeas corpus review. The court vacated his convictions based on the Michigan Supreme Court's prior interpretation of federal law, ruling that the absence of counsel at the preliminary examination was a structural error requiring automatic reversal, and remanded the case to the trial court for a new trial. *Id*. at *2.

The prosecution filed an application for leave to appeal in the Michigan Supreme Court challenging that ruling, and Petitioner filed an application for leave to appeal as a cross-appellant. Following briefing and argument, the Michigan Supreme Court ruled that the deprivation of counsel at a preliminary examination is subject to harmless-error review based upon the United States Supreme Court's

decision in *Coleman v. Alabama*, 399 U.S. 1 (1970), reversed the judgment of the

Michigan Court of Appeals, vacated Part II of its opinion, and remanded the case

to the Michigan Court of Appeals to determine whether the error was harmless and,

if so, to address Petitioner's sentencing claim. *People v. Lewis*, 501 Mich. 1, 903

N.W.2d 816 (2017).

On remand, the Michigan Court of Appeals ruled that the lack of counsel at

the preliminary examination was harmless error and affirmed Petitioner's

convictions, but remanded the case to the trial court to determine whether it would

have imposed a materially different sentence in light of *People v. Lockridge*, 498

Mich. 358, 870 N.W.2d 502 (2015). *People v. Lewis* (On Remand), 322 Mich.

App. 22, 910 N.W.2d 404 (2017). Petitioner filed an application for leave to

appeal with the Michigan Supreme Court, which was denied in a standard order.

*People v. Lewis*,  503 Mich. 1028, 926 N.W.2d 579 (2019). Petitioner also filed a

petition for a writ of certiorari with the United States Supreme Court, which was

denied. *Lewis v. Michigan*, 140 S. Ct. 843 (2020).

Petitioner thereafter filed his federal habeas corpus petition raising the

following claims:

I.      He was denied his Sixth Amendment right to counsel at the
        preliminary examination.

II.     He was denied a fair trial by the use of photographic lineups,

> when he was in custody without counsel, and trial counsel was
> ineffective for failing to move to suppress photographic lineups
> and for failing to request a corporeal lineup.

> III.    He was denied his right to a due process of law by the
> admission of a suggestive voice identification, and trial counsel
> was ineffective for failing to suppress the suggestive voice and
> in-court identifications.

> IV.    He was denied his right to a due process of law when important
> evidence was lost or destroyed by the police.

(ECF No. 1, Pet.) Respondent has filed an answer to the habeas petition contending

that it should be denied because certain claims (or portions thereof) are

procedurally defaulted and all of the claims lack merit. (ECF No. 9, Resp.)

## III.    Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"),

codified at 28 U.S.C. § 2241 *et seq.*, sets forth the standard of review that federal

courts must use when considering habeas petitions brought by prisoners

challenging their state court convictions.  The AEDPA provides in relevant part:

> An application for a writ of habeas corpus on behalf of a person in
> custody pursuant to the judgment of a State court shall not be
> granted with respect to any claim that was adjudicated on the
> merits in State court proceedings unless the adjudication of the
> claim--

> (1)    resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law,
> as determined by the Supreme Court of the United States; or

(2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d) (1996).

"A state court's decision is 'contrary to' ... clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002). "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694. However, "[i]n order for a federal court find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409. The "AEDPA thus

imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Lindh*, 521 U.S. at 333, n. 7); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam)).

A state court's determination that a claim lacks merit "precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003)). Pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or ... could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id*. Thus, in order to obtain habeas corpus relief in federal court, a state prisoner must show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*; *see also White v. Woodall*, 572 U.S. 415, 419-20 (2014).

Federal judges "are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." *Woods v. Donald*, 575 U.S. 312, 316 (2015). A petitioner cannot prevail as long as it is within the "realm of possibility" that fairminded jurists could find the state court decision to be reasonable. *Woods v. Etherton*, 576 U.S. 113, 118 (2016).

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *Williams*, 529 U.S. at 412; *see also Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009) (noting that the Supreme Court "has held on numerous occasions that it is not 'an unreasonable application of clearly established Federal law' for a state court to decline to apply a specific legal rule that has not been squarely established by this Court") (quoting *Wright v. Van Patten*, 552 U.S. 120, 125-26 (2008) (per curiam)); *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). Section 2254(d) "does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" *Harrington*, 562 U.S. at 100. Furthermore, it "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v.*

*Packer*, 537 U.S. 3, 8 (2002); *see also Mitchell*, 540 U.S. at 16.

The requirements of clearly established law are to be determined solely by Supreme Court precedent.  Thus, "circuit precedent does not constitute 'clearly established Federal law as determined by the Supreme Court'" and it cannot provide the basis for federal habeas corpus relief.  *Parker v. Matthews*, 567 U.S. 37, 48-49 (2012) (per curiam); *see also Lopez v. Smith*, 574 U.S. 1, 2 (2014) (per curiam).  The decisions of lower federal courts, however, may be useful in assessing the reasonableness of a state court's decision.  *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007) (citing *Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003)); *Dickens v. Jones*, 203 F. Supp. 354, 359 (E.D. Mich. 2002).

A state court's factual determinations are presumed correct on federal habeas review.  *See* 28 U.S.C. § 2254(e)(1).  A habeas corpus petitioner may rebut this presumption only with clear and convincing evidence.  *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).  Moreover, habeas corpus review is "limited to the record that was before the state court."  *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

## IV.   Analysis

### A.   Procedural Default

As an initial matter, Respondent contends that certain claims (or portions

thereof) are barred by procedural default. The Court declines to address this defense. Procedural default is not a jurisdictional bar to habeas review. *See Howard v. Bouchard*, 405 F.3d 459, 476 (6th Cir. 2005). Moreover, federal courts on habeas corpus review "are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). The United States Supreme Court has explained the rationale behind such a policy: "Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." *Lambrix*, 520 U.S. at 525. Such is the case here. The procedural issue is complex and the substantive issues are more readily decided on the merits. Accordingly, the Court shall address the merits of the habeas corpus claims.

**B. Merits**

**1. Right to Counsel at the Preliminary Examination**

Petitioner first asserts that he is entitled to habeas corpus relief because he was deprived of his right to counsel at the preliminary examination. Respondent contends that this claim lacks merit.

Petitioner raised this claim on direct appeal. The Michigan Court of

11

Appeals initially granted relief on this claim, ruling that Petitioner was deprived of

his right to counsel at the preliminary examination and that such error required

automatic reversal under existing Michigan law (albeit not federal law). *Lewis*,

2016 WL 3945944 at *2-4. The Michigan Supreme Court agreed that an error

occurred, but, in light of prevailing federal law, reversed and remanded the case to

the Michigan Court of Appeals to determine whether the error was harmless.

*Lewis*, 501 Mich. at 5-12.

On remand, the Michigan Court of Appeals concluded that the error was

harmless beyond a reasonable doubt. The court explained in relevant part:

> With regard to the procedural framework that should be applied for
> preserved nonstructural constitutional errors, the prosecution must
> prove that the error was harmless beyond a reasonable doubt. *People
> v. Carines*, 460 Mich. 750, 774 (appendix), 597 N.W.2d 130 (1999).
> However, determining the substantive criteria that should attend
> harmless-error review under these circumstances—where a defendant
> has been denied counsel at a preliminary examination—is more
> difficult. The Supreme Court admitted that it was "uncertain about
> just how a court is to evaluate the effect of this error on a verdict,"
> *Lewis*, 501 Mich. at 10, 903 N.W.2d 816, but it provided
> "guideposts," stating:
>
>> At each extreme, we know what is not permitted. At one
>> end, a court may not simply presume, without more, that
>> the deprivation of counsel at a preliminary examination
>> must have caused the defendant harm. Although
>> consistent with the presumption accorded to the
>> complete denial of counsel at some other stages of a
>> criminal proceeding, such an approach would be treating
>> the error as structural—a result foreclosed by *Coleman*.

12

> Neither, however, may we presume the opposite....
> *Coleman* does not permit us to presume that a defendant,
> who was ultimately convicted at an otherwise fair trial,
> suffered no harm from the absence of counsel at his
> preliminary examination. And that is true even if no
> evidence from the preliminary examination was used at
> trial, and even if defendant waived no rights or defenses
> because of the absence of counsel at the preliminary
> examination. [*Id.* at 10–11, 903 N.W.2d 816 (citations
> omitted).]

Thus, contrary to the dicta in our earlier opinion, *Lewis*, unpub. op. at 3-5, we cannot conclude that the error here was harmless simply because defense counsel conceded that no evidence from the preliminary examination was used at trial and that no rights or defenses were waived by defendant's lack of participation in the preliminary examination.

The United States Supreme Court's decision in *Coleman* provides further guidance. There, the Court identified four reasons why having counsel at a preliminary hearing may be essential to protecting a defendant's rights:

> First, the lawyer's skilled examination and
> cross-examination of witnesses may expose fatal
> weaknesses in the State's case that may lead the
> magistrate to refuse to bind the accused over. Second, in
> any event, the skilled interrogation of witnesses by an
> experienced lawyer can fashion a vital impeachment tool
> for use in cross-examination of the State's witnesses at
> the trial, or preserve testimony favorable to the accused
> of a witness who does not appear at the trial. Third,
> trained counsel can more effectively discover the case
> the State has against his client and make possible the
> preparation of a proper defense to meet that case at the
> trial. Fourth, counsel can also be influential at the
> preliminary hearing in making effective arguments for
> the accused on such matters as the necessity for an early

psychiatric examination or bail. [*Coleman*, 399 U.S. at 9, 90 S.Ct. 1999.]

These factors have been used by other courts to determine whether the deprivation of counsel at a preliminary hearing amounted to harmless error. *See, e.g., State v. Canaday*, 117 Ariz. 572, 575-576, 574 P.2d 60 (1977); *State v. Brown*, 279 Conn. 493, 509-510, 903 A.2d 169 (2006); *People v. Eddington*, 77 Mich. App. 177, 190-191, 258 N.W.2d 183 (1977).

Additionally, in her concurring opinion in this case, Justice McCormack opined that counsel's presence at the preliminary examination may be essential to negotiating plea deals. *Lewis*, 501 Mich. at 14, 903 N.W.2d 816 (McCormack, J., concurring). And defendant suggests, in his brief on remand, that counsel could discover the need to file pretrial motions at a preliminary examination. Based on the foregoing, we conclude that to determine whether the denial of counsel at a preliminary examination amounts to harmless error, courts must consider the factors discussed in *Coleman*, as well as any other factors relevant to the particular case, including the lost opportunity to negotiate a plea deal and any prejudice resulting from the failure to file pretrial motions.

\*\*\*

Turning to the specific facts at issue and the arguments raised by defendant on remand, we hold that any error resulting from the denial of counsel at defendant's preliminary examination was harmless beyond a reasonable doubt.

Looking to the first *Coleman* factor, defendant appears to argue that counsel could have objected to his bindover on the basis that no evidence was presented regarding the "condition of the buildings" he was accused of damaging or regarding whether the house on Russell Street qualified as a dwelling. However, a review of the preliminary-examination transcript and the relevant law makes clear that no such arguments by counsel would have altered the court's decision to bind defendant over for trial. Defendant fails to explain what he means by the "condition of the buildings," but assuming that

he is referring to the element necessary for conviction of both second- and third-degree arson—that a defendant burn, damage, or destroy buildings or dwellings by fire or explosives, MCL 750.73(1); MCL 750.74(1)(a)—the prosecution presented testimony at the preliminary examination regarding fires at each address. Further, defendant was convicted of third-degree arson regarding the building on Russell Street. In contrast to second-degree arson (requiring that damage be done to a dwelling), third-degree arson requires only that damage be done to buildings or structures.

Moreover, this Court has held that "the presentation of sufficient evidence to convict at trial renders any erroneous bindover decision harmless." *People v. Bennett*, 290 Mich. App. 465, 481, 802 N.W.2d 627 (2010). Although "*Coleman* does not permit us to presume that a defendant, who was ultimately convicted at an otherwise fair trial, suffered no harm from the absence of counsel at his preliminary examination," *Lewis*, 501 Mich. at 11, 903 N.W.2d 816 (opinion of the Court), it is relevant to our consideration of the first *Coleman* factor. Given that defendant was convicted at trial on the basis of sufficient evidence, the possibility that counsel could have detected preclusive flaws in the prosecution's probable-cause showing is moot. *Coleman*, 399 U.S. at 18, 90 S.Ct. 1999, 26 L.Ed. 2d 387.

Defendant's arguments with regard to the second *Coleman* factor are no more persuasive. He asserts that he had no opportunity for cross-examination at the preliminary examination because the court precluded his participation and that, as a result, witnesses were never asked to provide a description of the person they saw committing the crimes, making impeachment impossible. But "[a] defendant's opportunity to cross-examine witnesses at a preliminary hearing is only a limited one." *Canaday*, 117 Ariz. at 576, 574 P.2d 60. *See also Adams v. Illinois*, 405 U.S. 278, 281-282, 92 S.Ct. 916, 31 L.Ed.2d 202 (1972) (recognizing limitations on the use of preliminary hearings for discovery and impeachment purposes). And although defendant was unrepresented at the preliminary examination, he was appointed new counsel at the next hearing, who it appears was given a transcript of the preliminary examination. This newly appointed counsel could have used the transcript for impeachment at trial. *See*

*Thomas v. Kemp*, 796 F.2d 1322, 1327 (C.A. 11, 1986) (concluding that the absence of counsel at a preliminary hearing was harmless error where, inter alia, the defendant's "counsel had access to the transcript of the preliminary hearing because he used the transcript to impeach the testimony of the State's main witnesses").

Further, defendant's argument that testimony about the perpetrator's identity at the preliminary examination would have been useful at trial for impeachment purposes is purely speculative. Defendant references inconsistencies between the witnesses' descriptions at trial, but the jury heard this testimony, as well as defense counsel's closing argument calling attention to the inconsistencies, and still voted to convict. *See Ditch v. Grace*, 479 F.3d 249, 257 (C.A. 3, 2007) (concluding "that the denial of counsel ultimately did not have a substantial or injurious effect on the jury's ultimate verdict" because "[t]here was substantial evidence of guilt, and the jury was well-apprised of the weaknesses in [the witness's] identification testimony," despite the fact that trained counsel could have conducted a cross-examination of the witness at the preliminary hearing to expose weaknesses in his testimony and for use as an impeachment tool at trial).

With respect to the third *Coleman* factor, defendant argues that his inability to cross-examine witnesses at the preliminary examination hampered his pretrial discovery, but he fails to identify any evidence used at trial that counsel could have discovered by virtue of participation in the preliminary examination. And neither the fourth *Coleman* factor nor the additional factor identified by Justice McCormack affects our determination that the deprivation of counsel at defendant's preliminary examination was harmless error. Defendant does not argue that counsel could have requested an early psychiatric evaluation, and the record establishes that he was referred to the Forensic Center before the preliminary examination. Further, defendant lost no opportunity to negotiate a plea deal because he lacked counsel. At the August 8, 2014 hearing, the prosecutor stated that the plea deal offered to defendant would be available until the final conference.

16

Defendant's additional arguments related to the specific circumstances of his case also fail. He asserts first that he was denied the defense of misidentification because counsel could have moved for a corporeal lineup at the preliminary examination based on the fact that a witness had identified someone other than defendant in a photographic lineup. The witness was not, however, the only witness who identified defendant at the preliminary examination. Lieutenant Jamel Mayers testified that he apprehended defendant, who matched the description provided by the witness, and Lieutenant Daniel Richardson testified that he also apprehended defendant, who matched the description provided by a different witness. Moreover, defendant merely speculates that the result of a corporeal lineup would have been favorable to his defense. But as we concluded in our earlier opinion, the use of a photographic lineup instead of a corporeal lineup did not affect defendant's substantial rights. *Lewis*, unpub. op. at 6-7.

Defendant also argues that counsel could have questioned the officers about the lighters and moved to suppress them if they were lost, asserting that the lighters were incapable of starting a fire. However, he fails to explain what such questioning would have revealed, and it is unclear how or why counsel would have moved to suppress lost items. Moreover, counsel appointed for defendant at the next hearing could have filed a motion to suppress the evidence before trial but chose not to do so. And regardless, no prejudice resulted from the failure to suppress the lighters because they were not introduced at trial. Instead, photographs of the lighters were introduced, and defendant does not argue that the photographs were improperly admitted.

Further we note that, as in *Canaday*, defendant was appointed new counsel at the hearing after the preliminary examination. Neither defendant's newly appointed counsel, nor his counsel at trial, ever argued that defendant was prejudiced by the denial of counsel at the preliminary examination. This suggests that neither defendant, nor his attorneys, "immediately perceived any prejudice resulting from [defendant's] failure to be represented at his preliminary hearing." *Canaday*, 117 Ariz. at 575, 574 P.2d 60.

> Based on the foregoing, we hold that any error resulting from the denial of counsel at defendant's preliminary examination was harmless beyond a reasonable doubt.

*Lewis*, 322 Mich. App. at 27-34 (footnotes omitted).

The state court's decision is neither contrary to Supreme Court law nor an unreasonable application of federal law or the facts. The Supreme Court has held that when a criminal defendant has been denied counsel at a preliminary examination, "the test to be applied is whether the denial of counsel ... was harmless error." *Coleman v. Alabama*, 399 U.S. 1, 11 (1970) (citations omitted); *see also Adams v. Illinois*, 405 U.S. 278, 282-283 (1972) ("the lack of counsel at a preliminary hearing involves less danger to 'the integrity of the truth-determining process at trial' than the omission of counsel at the trial itself or on appeal") (internal quotation omitted). The United States Court of Appeals for the Sixth Circuit has applied a harmless error analysis when reviewing a claim that a habeas corpus petitioner was denied the right to counsel at a preliminary examination during state court criminal proceedings. *See Takacs v. Engle*, 768 F.2d 122, 124 (6th Cir. 1985); *McKeldin v. Rose*, 631 F.2d 458, 460-461 (6th Cir. 1980); *see also Dodge v. Johnson*, 471 F.2d 1249, 1252 (6th Cir. 1973) (record failed to establish that lack of counsel at preliminary examination prejudiced petitioner's rights at trial or in any way tainted finding of guilt).

On direct review of a conviction, a constitutional error is considered harmless only if the reviewing court concludes that it was harmless beyond a reasonable doubt.  *See Chapman v. California*, 386 U.S. 18, 24 (1967).  The Supreme Court subsequently held that for purposes of determining whether federal habeas corpus relief should be granted to a state prisoner based on federal constitutional error, the appropriate harmless error standard to apply is whether the error "had a substantial and injurious effect or influence in determining the jury's verdict."  *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993).  Most recently, the Supreme Court held that in order for a habeas corpus petitioner to obtain relief on an error that a state appellate court has determined to be harmless, the petitioner must not only satisfy the *Brecht* standard and show that the error had a substantial and injurious effect or influence on the verdict, the petitioner must also show that the state court's determination that the error was harmless beyond a reasonable doubt was an unreasonable application of *Chapman*.  *Brown v. Davenport*, _ U.S. _, 142 S. Ct. 1510, 1517, 1520, 1524-1525 (2022).

In this case, the lack of counsel at the preliminary examination, while a significant error, was harmless under this standard.  As discussed by the Michigan Court of Appeals, no evidence from the preliminary examination was used at trial and Petitioner did not waive any rights or defenses.  Petitioner did not have a valid

19

objection to the bindover decision.  The prosecution presented sufficient evidence of Petitioner's guilt, *e.g.*, the eyewitness testimony identifying him as entering/exiting the buildings shortly before the fires and the police testimony that Petitioner attempted to flee and was carrying four lighters at the time of his arrest, at trial.  Trial counsel had access to the preliminary examination transcripts and the opportunity to use them for impeachment at trial.  The jury was made aware of weaknesses and inconsistencies in the witnesses' testimony at trial.  Petitioner had a forensic evaluation and the opportunity to take a plea deal.  There is no evidence that a corporeal lineup would have benefitted the defense.  The testimony and photographs of the lighters were properly admitted into evidence.  And trial counsel never argued that Petitioner was prejudiced by the absence of counsel at the preliminary examination.  Given such circumstances, the Michigan Court of Appeals reasonably concluded that the absence of counsel at the preliminary examination was harmless beyond a reasonable doubt and this Court is confident that the absence of counsel at the preliminary examination did not have a substantial and injurious effect or influence on the jury's verdict.  Habeas corpus relief is not warranted on this claim.

### 2.    Use of Photographic Arrays

Petitioner next asserts that he is entitled to habeas corpus relief because the

police conducted photographic arrays, rather than corporeal lineups, while he was

in custody and defense counsel was not present for them.  He relatedly asserts that

trial counsel was ineffective for failing to request a corporeal lineup and for

failing to move to suppress the witnesses' identifications.  Respondent contends

that this claim is barred by procedural default and that it lacks merit.

Petitioner raised this claim on direct appeal.  The Michigan Court of

Appeals considered the claim on plain error review and denied relief.  The court

explained in relevant part:

> Under Michigan law, identification by a corporeal lineup is required
> when an accused is in custody unless a legitimate reason for holding
> a photographic line-up exists. *People v. Kurylczyk*, 443 Mich. 289,
> 298; 505 NW2d 528 (1993). Legitimate reasons for conducting a
> photographic line-up instead of a corporeal lineup when the
> defendant is in custody include (1) it is not possible to arrange a
> proper lineup, (2) there are an insufficient number of individuals
> available who have similar physical characteristics, (3) the nature of
> the case requires an immediate identification, (4) the witnesses are
> located too far away from the location of the accused, (5) the accused
> refuses to participate and would seek to destroy the value of the
> identification. *People v. Anderson*, 389 Mich. 155, 186 n 1, 187 n 2-
> 5; 205 NW2d 461 (1973), overruled on other grounds by *People v.
> Hickman*, 470 Mich. 602; 684 NW2d 267 (2004).
>
> Because defendant never raised this issue in the trial court, the record
> is devoid of any justification for using a photographic line-up instead
> of a corporeal line-up while defendant was in custody. We will
> therefore assure that the decision to admit the identification evidence
> resulting from the photographic line-up was plain error, because we
> conclude that defendant cannot demonstrate that any error affected
> his substantial rights i.e., that it affected the outcome of the lower

court proceedings. While Jackson, Goward, and Folson were shown the photographic line-up, Blanton was not and still identified defendant as the man who set fire to 20438 Hawthorne. In addition, because Jackson, Goward, and Folson had an independent basis for their identifications of defendant, the in-court identification is still permissible if it can be demonstrated that the witness had a basis, independent of the line-up, for the identification. *People v. Gray*, 457 Mich. 107, 114–115; 577 NW2d 92 (1998).

The *Gray* Court stated that the following factors should be considered: (1) a prior relationship with or knowledge of the defendant, (2) the opportunity to observe the offense, (3) the length of time between the offense and the disputed identification, (4) the accuracy or discrepancies in the line-up description and the defendant's actual description, (5) any previous proper identification or failure to identify the defendant, (6) any identification prior to the line-up of another person as defendant, (7) the nature of the alleged offense and the physical and psychological state of the victim, and (8) any idiosyncratic or special features of the defendant. *Id*. at 116. While Jackson, Goward, and Folson did not have a prior relationship with defendant, they all had an extended opportunity to observe defendant. They all testified that they watched as he walked down the street and into the homes that were eventually set on fire. In addition, the identifications made by Jackson and Goward were made within days of the fires.

While defendant notes minor discrepancies in Goward's and Folson's description of what defendant was wearing on the day in question, Goward accurately described defendant as wearing a hat and a blue hooded jacket. In addition, Folson was able to provide a voice identification of defendant. Finally, both Mayers and Richardson testified that when they encountered defendant, he began to flee. Once defendant was apprehended, four cigarette lighters were found in his pocket. Therefore, it cannot be said that the use of a photographic line-up instead of a corporeal lineup affected defendant's substantial rights.

\*\*\*

The right to counsel at a photographic line-up attaches with custody.

*Anderson*, 389 Mich. at 186-187. However, in *Hickman*, 470 Mich. at 603, the Court subsequently held that at corporeal lineups the right to counsel does not attach until "the initiation of adversarial criminal proceedings." Adversarial criminal proceedings are considered to have commenced after a "formal charge, preliminary hearing, indictment, information, or arraignment." *Kirby v. Illinois*, 406 U.S. 682, 689; 92 S Ct 1877; 32 L. Ed. 2d 411 (1972).

The Court in *Hickman* ruled that *Anderson's* expansion of the right to counsel to the period before the initiation of adversarial criminal proceedings was not supported by either the United States Constitution or the Michigan Constitution. *Hickman*, 470 Mich. at 603-604. While *Hickman* involved a corporeal line-up, it stands to reason that no such right exists in the context of photographic line-ups either. At the time of the line-up, defendant had been arrested, booked into custody, and fingerprinted. However, because adversarial criminal proceedings had not commenced at the time of the identification, the right of counsel had not yet attached to defendant. Defendant was not entitled to counsel at the time of the photographic line-up.

*Lewis*, 2016 WL 3945944 at *6.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. The Sixth Amendment, however, does not grant a defendant the right to counsel at a photographic array conducted by the government for the purpose of allowing a witness to attempt the identification of the offender, even when the array is conducted after an arrest, or after an

indictment or charges have been returned. *United States v. Ash*, 413 U.S. 300, 321 (1973); *Van v. Jones*, 475 F.3d 292, 311 (6th Cir. 2007); *Hanks v. Jackson*, 123 F. Supp. 2d 1061, 1071 (E.D. Mich. 2000). Thus, the mere fact that defense counsel was not present during the photographic arrays does not render the witnesses' identifications and subsequent testimony unconstitutional as a matter of federal law.

Furthermore, a criminal defendant has no federal constitutional right to a live or corporeal lineup. *Mitchell v. Vasbinder*, 644 F. Supp. 2d 846, 866 (E.D. Mich. 2009); *Payne v. Smith*, 207 F. Supp. 2d 627, 645 (E.D. Mich. 2002) (citing cases); *accord Morris v. Giurbino*, 162 F. App'x 769, 771 (9th Cir. 2006) ("The United States Supreme Court has never held that a criminal defendant has a constitutional right to a pretrial lineup."); *Branch v. Estelle*, 631 F.2d 1229, 1234 (5th Cir. 1980). Petitioner fails to establish a violation of his federal constitutional rights.

To the extent that Petitioner asserts a violation of Michigan law as to these issues, he fails to state a claim for habeas corpus relief. State courts are the final arbiters of state law and federal courts will not intervene in such matters. *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Oviedo v. Jago*, 809 F.2d 326, 328 (6th Cir. 1987); *see also Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("[A] state court's

interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting on habeas review"); *Sanford v. Yukins*, 288 F.3d 855, 860 (6th Cir. 2002). Habeas corpus relief does not lie for perceived errors of state law. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"). Petitioner fails to establish a violation of his federal constitutional rights. Habeas corpus relief is not warranted on this claim.

Petitioner relatedly asserts that trial counsel was ineffective for failing to request a corporeal line-up and for failing to seek suppression of the witnesses' identifications. The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to the effective assistance of counsel. In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court set forth a two-prong test for determining whether a habeas corpus petitioner has received ineffective assistance of counsel. First, a petitioner must prove that counsel's performance was deficient. This requires a showing that counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687. Second, the petitioner must prove that counsel's deficient performance prejudiced the defense. Counsel's errors must

have been so serious that they deprived the petitioner of a fair trial or appeal. *Id*.

To satisfy the performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance." *Id*. at 690. The reviewing court's scrutiny of counsel's performance is highly deferential. *Id*. at 689. There is a strong presumption that trial counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id.* at 690. The petitioner bears the burden of overcoming the presumption that the challenged actions were sound trial strategy.

As to the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. A reasonable probability is one that is sufficient to undermine confidence in the outcome of the proceeding. *Id*. "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

The United States Supreme Court has confirmed that a federal court's consideration of ineffective assistance of counsel claims arising from state criminal proceedings is quite limited on habeas corpus review due to the deference

accorded trial attorneys and state appellate courts reviewing their performance. "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington*, 562 U.S. at 105 (internal and end citations omitted). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id*.

In this case, Petitioner cannot establish that trial counsel erred and/or that he was prejudiced by counsel's conduct. First, as to the lack of a corporeal line-up, counsel may have reasonably decided not the request such a lineup to avoid giving witnesses an additional opportunity to view Petitioner and/or identify him as the perpetrator. Petitioner also fails to establish that such a line-up would have been favorable to his defense. It is well-settled that conclusory allegations are insufficient to justify habeas relief. *See Workman v. Bell*, 178 F.3d 759, 771 (6th Cir. 1998) (conclusory allegations of ineffective assistance of counsel do not justify habeas relief); *see also Wogenstahl v. Mitchell*, 668 F.3d 307, 335-336 (6th Cir. 2012) (citing *Workman* and denying habeas relief on conclusory claims); *Washington v. Renico*, 455 F.3d 722, 733 (6th Cir. 2006) (bald assertions and conclusory allegations do not provide a basis for an evidentiary hearing on habeas

review).

Second, as to the lack of a suppression motion, Petitioner cannot establish that trial counsel erred and/or that he was prejudiced by counsel's conduct given the Michigan Court of Appeals' decision and this Court's ruling that the underlying claims concerning the use of the photographic arrays lack merit.  Trial counsel cannot be deemed ineffective for failing to make a futile objection or meritless argument.  *Tackett v. Trierweiler*, 956 F.3d 358, 375 (6th Cir. 2020); *Hoffner v. Bradshaw*, 622 F.3d 487, 499 (6th Cir. 2010).  Petitioner fails to establish that trial counsel was ineffective in this regard.  Habeas corpus relief is not warranted on this claim.

### 3.   Admission of Voice Identification Testimony

Petitioner next asserts that he is entitled to habeas corpus relief because the trial court erred in admitting Mollison Folson's voice identification testimony. Specifically, he asserts that the voice identification was unduly suggestive and lacked a proper foundation.  Petitioner relatedly asserts that trial counsel was ineffective for failing to move to suppress the testimony.  Respondent contends that this claim is procedurally defaulted and that it lacks merit.

Petitioner raised this claim on direct appeal.  The Michigan Court of Appeals considered this claim on plain error review and denied relief.  The court

explained in relevant part:

> "The fairness of an identification procedure is evaluated in light of the total circumstances to determine whether the procedure was so impermissibly suggestive that it led to a substantial likelihood of misidentification." *People v. Murphy* (On Remand), 282 Mich. App. 571, 584; 766 NW2d 303 (2009). "Vocal identification evidence is competent if the identifying witness demonstrates certainty ... in the mind ... by testimony that is positive and unequivocal." *Id*. In addition, voice identification must be based on a peculiarity in the voice or on sufficient previous knowledge by the witness of the person's voice. *Id*.

> The voice identification procedure was not so impermissibly suggestive that it led to a substantial likelihood of misidentification. *Id*. Folson testified that defendant was yelling that a white man had been raping several women and defendant asked Folson if he had seen the man. Nothing has been offered to establish that the voice identification was impermissibly objective, and the totality of the circumstances do not suggest otherwise. Folson then observed defendant go into the home. When defendant emerged from the home, he again approached Folson and asked if he had seen the man. This demonstrates that Folson had a high degree of attention to defendant's voice. Folson also testified that he was certain that defendant's voice matched the voice of the individual who walked into the home when he heard it just under five months later. The totality of the circumstances, as well as Folson's certainty that defendant was the perpetrator, indicate that the voice identification was permissible.

> Defendant also argues that Folson's vocal identification lacked an adequate foundation.
>
> ***
>
> MRE 901(a) states that "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." The evidentiary rule provides examples of proper authentication. In the context of voice identification, MRE

29

901(b)(5) provides that "[i]dentification of a voice, whether heard firsthand or through mechanical or electronic transmission or recording, by opinion based upon hearing the voice at any time under circumstances connecting it with the alleged speaker" is an acceptable method of authentication.

As already noted, Folson had ample opportunity to hear defendant's voice on the day in question. Defendant was yelling and approached Folson twice to talk to him. Folson was of the opinion that it was defendant's voice given that he had the opportunity to hear it first hand from a short distance away. Folson's voice identification of defendant did not lack foundation and any issues with the identification would affect only the weight of the identification, not its admissibility. *People v. Berkey*, 437 Mich. 40, 52; 467 NW2d 6 (1991). Therefore, the trial court did not commit plain error in allowing Folson's voice identification testimony.

*Lewis*, 2016 WL 3945944 at *7-8.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. Due process protects the accused against the introduction of evidence which results from an unreliable identification obtained through unnecessarily suggestive procedures. *Moore v. Illinois*, 434 U.S. 220, 227 (1977). Due process requires the suppression of eyewitness identification evidence "when law enforcement officers use an identification procedure that is both suggestive and unnecessary." *Perry v. New Hampshire*, 565 U.S. 228, 241 n.6 (2012) (quoting *Manson v. Brathwaite*, 432 U.S. 98, 114 (1977)). There is a two-step procedure for determining whether an identification can be admitted consistent with due process. The first step is to

determine whether the identification procedure was impermissibly suggestive. *Ledbetter v. Edwards*, 35 F.3d 1062, 1070-71 (6th Cir. 1994). If the procedure was impermissibly suggestive, the second step is to determine whether the identification nonetheless has sufficient indicia of reliability considering all the circumstances. *Id*. Five considerations bear on the reliability of an identification: (1) the witness's opportunity to view (or hear) the perpetrator at the time of the crime; (2) the witness's degree of attention at the time of the crime; (3) the accuracy of the witness's prior description of the perpetrator; (4) the witness's level of certainty when identifying the suspect at the confrontation; and (5) the length of time that has elapsed between the time and the confrontation. *Neil v. Biggers*, 409 U.S. 188, 199-200 (1972). A criminal defendant has the initial burden of proving that the identification procedure was impermissibly suggestive. It is only after a habeas petitioner meets this burden of proof that the burden shifts to the state to prove that the identification was reliable. *Johnson v. Warren*, 344 F. Supp. 2d 1081, 1090 (E.D. Mich. 2004).

Petitioner fails to show that the voice identification was impermissibly suggestive and/or that it was unreliable. The fact that Petitioner appeared as the defendant during the preliminary examination was arguably suggestive. As the Supreme Court has recognized: "Most eyewitness identifications involve some

element of suggestion. Indeed, all in-court identifications do." *Perry*, 565 U.S. at

244.  The United States Supreme Court, however, has not found a witness's

identification of a defendant at a preliminary examination to be a due process

violation absent improper state conduct.  As explained in *Perry*, "[t]he fallibility

of eyewitness evidence does not, without the taint of improper state conduct,

warrant a due process rule requiring a trial court to screen such evidence for

reliability before allowing the jury to assess its creditworthiness." *Perry*, 565 U.S.

at 232.  When no improper law enforcement activity is involved, "it suffices to

test reliability through the rights and opportunities generally designed for that

purpose" such as "vigorous cross-examination, protective rules of evidence, and

jury instructions on both the fallibility of eyewitness identification and the

requirement that guilt be proved beyond a reasonable doubt." *Id*. at 233.  In this

case, there is no evidence of improper police or prosecutor conduct.

Nonetheless, even if there were, Petitioner fails to allege facts which show

that Folson's identification was unreliable – and the record belies such an

assertion.  Folson testified at the preliminary examination and at trial that he heard

Petitioner screaming about a white guy raping women before he entered one of the

houses, that he viewed Petitioner before he entered the house and again after he

left the house, and that he saw the fire department putting out the fire shortly

thereafter.  (*See* 7/30/14 Prelim. Ex. Tr., ECF No. 10-5, PageID.293-95, 11/5/14

Trial Tr., ECF No. 10-11, PageID.1608-13, 1620.)  Folson made the voice

identification at the preliminary examination only five months after the incident

and was positive in his identification.  Folson was also positive in his

identification at trial and the record shows that he identified Petitioner based upon

his recollection of events at the time of the fire.  Folsom's in-court identification

was reliable.  Petitioner fails to establish a constitutional violation.  Habeas corpus

relief is not warranted on this claim.

Petitioner is also not entitled to relief on the evidentiary portion of this

claim. Alleged trial court errors in the application of state evidentiary law are

generally not cognizable as grounds for federal habeas corpus relief.  *Estelle*, 502

U.S. at 67-68; *Serra v. Michigan Dep't of Corr.*, 4 F.3d 1348, 1354 (6th Cir.

1993).  "Trial court errors in state procedure or evidentiary law do not rise to the

level of federal constitutional claims warranting relief in a habeas action, unless

the error renders the proceeding so fundamentally unfair as to deprive the

petitioner of due process under the Fourteenth Amendment."  *McAdoo v. Elo*, 365

F.3d 487, 494 (6th Cir. 2004) (quoting *McGuire*, 502 U.S. at 69-70); *see also*

*Wynne v. Renico*, 606 F.3d 867, 871 (6th Cir. 2010) (citing *Bey v. Bagley*, 500

F.3d 514, 519-520 (6th Cir. 2007)); *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir.

2003).

In this case, the Michigan Court of Appeals ruled that a proper foundation was laid for admission of the voice identification testimony and it was properly admitted under Michigan law.  As discussed, state courts are the final arbiters of state law and federal courts will not intervene in such matters.  *Lewis*, 497 U.S. at 780; *Oviedo*, 809 F.2d at 328; *see also Bradshaw*, 546 U.S. at 76; *Sanford*, 288 F.3d at 860.  Habeas corpus relief does not lie for perceived errors of state law. *Estelle*, 502 U.S. at 67-68.  Moreover, Petitioner fails to show that the admission of the evidence violated due process or rendered his trial fundamentally unfair. The risk of unfair prejudice was also mitigated by the fact that the trial court instructed the jury on the proper consideration of witness testimony.  (*See* 11/11/14 Trial Tr., ECF No. 10-14, PageID.1992-1994.)  Jurors are presumed to follow the court's instructions.  *See Penry v. Johnson*, 532 U.S. 782, 799 (2001) (citing *Richardson v. Marsh*, 481 U.S. 200, 211 (1987)); *United States v. Powell*, 469 U.S. 57, 66 (1984) ("Jurors ... take an oath to follow the law as charged, and they are expected to follow it.").  Petitioner fails to show that the admission of the voice identification testimony was erroneous or, more importantly for purposes of habeas review, that it rendered his trial fundamentally unfair.  Habeas corpus relief is not warranted on this claim.

Petitioner relatedly asserts that trial counsel was ineffective for failing to move to suppress the voice identification testimony.  As discussed *supra*, to prevail on such a claim, a habeas corpus petitioner must establish that trial counsel's performance was deficient and that he was prejudiced by counsel's conduct.  *Strickland*, 466 U.S. at 687.  In this case, Petitioner cannot establish that trial counsel erred and/or that he was prejudiced by counsel's conduct given the Michigan Court of Appeals' decision and this Court's ruling that the underlying claims lack merit.  Again, trial counsel cannot be deemed ineffective for failing to make a futile objection or meritless argument.  *Tackett*, 956 F.3d at 375; *Hoffner*, 622 F.3d at 499.  Petitioner fails to establish that trial counsel was ineffective in this regard.  Habeas corpus relief is not warranted on this claim.

### 4.  Police Loss/Destruction of Evidence

Lastly, Petitioner asserts that he is entitled to habeas corpus relief because the police lost or destroyed evidence – the four lighters that the police confiscated from Petitioner at the time of his arrest.  Respondent contends that this claim is procedurally defaulted and that it lacks merit.

Petitioner raised this claim on direct appeal.  The Michigan Court of Appeals considered the claim on plain error review and denied relief.  The court explained in relevant part:

In *Brady*, the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87. The Michigan Supreme Court has since articulated a three-part test to determine whether a *Brady* violation has occurred: "(1) the prosecution has suppressed evidence; (2) that is favorable to the accused; and (3) that is material." *People v. Chenault*, 495 Mich. 142, 150; 845 NW2d 731 (2014). In addition, MCR 6.201(B)(1) requires disclosure, upon request, of "any exculpatory information or evidence known to the prosecuting attorney."

Here, the evidence showed that Richardson discovered four lighters in defendant's pocket, took a picture of the lighters, and handed them over to police officers. However, the lighters were lost and never placed in evidence. Therefore, regardless of the government's good faith or bad faith in losing the lighters, they are considered suppressed for purposes of *Brady*.

Evidence is considered to be favorable to the defense when "it is either exculpatory or impeaching." *Id*. Defendant contends that if he had possession of the lighters, he could demonstrate that they were inoperable, and could not have been used to start the fires. Defendant does not provide any corroboration for this claim or explain why he would be carrying around multiple inoperable lighters while fleeing from the scene of a fire. If, contrary to defendant's claim, the lighters were operable, their introduction at trial would have been harmful to defendant. Thus, defendant cannot satisfy the materiality requirement because it cannot be said that "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id*.

*Lewis*, 2016 WL 3945944 at *8-9.

The state court's denial of relief is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts.  It is

well-settled that there is no general constitutional right to discovery in a criminal

case. *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977); *United States v. Presser*,

844 F.2d 1275, 1281 (6th Cir. 1988).  A prosecutor's failure to disclose evidence

favorable to the defense constitutes a denial of due process "where the evidence is

material either to guilt or to punishment, irrespective of the good faith or bad faith

of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87 (1963).  Favorable

evidence is material "if there is a reasonable probability that, had the evidence

been disclosed to the defense, the result of the proceeding would have been

different." *United States v. Bagley*, 473 U.S. 667, 682 (1985); *see also Kyles v.

Whitley*, 514 U.S. 419, 432-36 (1995).  Material evidence is that which is "so

clearly supportive of a claim of innocence that it gives the prosecution notice of a

duty to produce." *United States v. Clark*, 988 F.2d 1459, 1467 (6th Cir. 1993).

The duty to disclose favorable evidence includes the duty to disclose impeachment

evidence. *Bagley, supra; Giglio v. United States*, 405 U.S. 150, 154-55 (1972).

While due process requires a prosecutor to disclose exculpatory evidence, it "does

not require the government to create exculpatory material that does not exist."

*Stadler v. Curtin*, 682 F. Supp. 2d 807, 819 (E.D. Mich. 2010) (citing cases); *see

also Dallas v. Holmes*, 137 F. App'x 746, 754 (6th Cir. 2005).

    The United States Supreme Court has made clear that due process requires

that police (and prosecutors) preserve "clearly exculpatory" evidence in their possession that might not be available to a defendant through other means. *California v. Trombetta*, 467 U.S. 479, 489 (1984).  If such evidence is destroyed, a due process violation occurs irrespective of the good or bad faith of the police. To prevail on such a claim, a defendant must show that the police destroyed evidence with "an exculpatory value that was apparent before [it] was destroyed." *Id*.

In contrast, when the police only fail to preserve "potentially useful" evidence that might have been exculpatory, a defendant must prove that the police acted in bad faith by destroying the evidence in order to establish a due process violation.  *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988).  Thus, when the state fails to preserve evidentiary material "of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant," a defendant must show:  (1) that the government acted in bad faith in failing to preserve the evidence; (2) that the exculpatory value of the evidence was apparent before its destruction; and (3) that the nature of the evidence was such that the defendant would be unable to obtain comparable evidence by other means. *Monzo v. Edwards,* 281 F.3d 568, 580 (6th Cir. 2002).

A habeas corpus petitioner has the burden to establish that the police acted

in bad faith in failing to preserve potentially exculpatory evidence. *Malcum v. Burt,* 276 F. Supp. 2d 664, 683 (E.D. Mich. 2003). The mere fact that the police had control over evidence and failed to preserve it is insufficient, by itself, to establish bad faith, nor will bad faith be found in the negligent, or even grossly negligent, failure to preserve potentially exculpatory evidence. *Id.*; *United States v. Wright*, 260 F.3d 568, 571 (6th Cir. 2001). "The presence or absence of bad faith by the police for purposes of the Due Process Clause must necessarily turn on the police's knowledge of the exculpatory value of the evidence at the time it was lost or destroyed." *Youngblood*, 488 U.S. at 56.

In this case, there is no evidence that the four lighters were "clearly exculpatory" material. Petitioner's allegation that testing would have shown that the lighters were inoperable is purely speculative. "Where '[t]here is no indication that there was anything exculpatory' about destroyed evidence, due process has not been violated." *United States v. Jobson*, 102 F. 3d 214, 219 (6th Cir. 1996) (quoting *United States v. Braggs*, 23 F.3d 1047, 1051 (6th Cir. 1994)). The most that can be said is that the missing lighters were "potentially exculpatory." Consequently, *Youngblood*, rather than *Brady* or *Trombetta*, governs this issue.[1]

---

[1]The Court notes that the Michigan Court of Appeals did not discuss *Youngblood* and merely applied *Brady* to deny relief on this claim. In that sense, the court's analysis could be seen as contrary to Supreme Court precedent. But the court's analysis favored Petitioner by essentially presuming that the lighters were

Petitioner neither alleges nor establishes that the police or the prosecutor acted in bad faith.  Moreover, the record indicates that Lieutenant Richardson confiscated the lighters and gave them to police officers for retention as evidence, but when he went to retrieve the lighters from the evidence control unit, he discovered that there was no record of them.  (*See* 11/6/14 Jury Trial Tr., ECF No. 10-12, PageID.1758-1762.)  Thus, while the police officers should have retained the lighters as evidence, the record indicates that their conduct was, at most, negligent.  Petitioner fails to establish a violation of his constitutional rights. Habeas corpus relief is not warranted on this claim.

## V.  Conclusion

For the reasons stated, the Court concludes that Petitioner is not entitled to habeas corpus relief on his claims.  Accordingly, the Court **DENIES** and **DISMISSES WITH PREJUDICE** the petition for a writ of habeas corpus.

Before Petitioner may appeal, a certificate of appealability must issue.  *See* 28 U.S.C. § 2253(c)(1)(a); FED. R. APP. P. 22(b).  A certificate of appealability may issue only if a petitioner makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  When a court denies relief on the

---

exculpatory under *Brady* and requiring the court to determine whether their loss was outcome determinative.  In any event, this Court concludes that Petitioner is not entitled to relief under *Youngblood* or *Brady*.

merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the court's assessment of the claim debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484-485 (2000).  The Court concludes that Petitioner makes no such showing.  Accordingly, the Court **DENIES** a certificate of appealability.

Lastly, the Court concludes that an appeal from this decision cannot be taken in good faith.  *See* FED. R. APP. P. 24(a).  Accordingly, the Court **DENIES** leave to proceed in forma pauperis on appeal.  This case is **CLOSED**.

**IT IS SO ORDERED**.

s/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated: August 1, 2023